IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA HAWTHORNE,<br>PLAINTIFF, | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:17-CV-02350 |
| KS MANAGEMENT SERVICES, LLC,<br>DEFENDANT. | § § § § § | |

---

**DEFENDANT, KS MANAGEMENT SERVICES, LLC'S, RESPONSE IN OPPOSITION TO PLAINTIFF, VIRIGNIA HAWTHORNE'S, APPLICATION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS**

---

Defendant, KS Management Services, LLC ("Defendant"), files this Response in Opposition to Plaintiff, Virginia Hawthorne's ("Plaintiff") Application for Attorneys' Fees, Litigation Expenses, and Costs ("Application").

## Background

1.    In this ADA discrimination suit, Plaintiff prevailed at a jury trial on two of her four causes of action and received less than 30% of the recovery she sought from the jury.   What Plaintiff lost on the merits, she seeks in attorneys' fees and then some, to the tune of 680%.

1

2.      At the conclusion of trial held from December 1-7, 2022, the jury returned a verdict in favor of Plaintiff on her claims of actual disability and failure to accommodate in violation of the Americans with Disabilities Act ("ADA"). The jury rendered a Defense verdict as to Plaintiff's claims of  perceived disability and retaliation. The jury also denied Plaintiff's request for punitive damages. *See* Jury Verdict on file in this Court under Document No. 85.

3.      On or about December 22, 2021, Plaintiff filed its Application for Attorney's Fees, Litigation Expenses, and Costs seeking recovery of $182,000.00 in attorney fees and $8,796.61 in litigation expenses and costs as a prevailing party pursuant to 42 U.S.C. § 12205.

4.      Defendant acknowledges this Court may, and often does, award fees under the circumstances, but objects to the excessive and unreasonable attorney fees requested and contests the extent of Plaintiff's entitlement to attorneys' fees based on the jury verdict in this case.

## Argument & Authorities

### I.      Legal Standard

3.      Under 42 U.S.C. § 12205, the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee, including litigation expenses, and costs. In assessing the proper fee to be awarded, the Fifth Circuit utilizes a well-established process called the lodestar method. *La. Power & Light Co. v. Kellstrom,* 50 F.3d

319, 323–24 (5th Cir.1995). Under this method, a court first determines the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. *Id.* at 324. The multiplication of the reasonable hours by the reasonable hourly rates yields the lodestar. *Id.* (citing *Blum v. Stenson,* 465 U.S. 886, 888 (1984)).

4.     After calculating the lodestar amount, the court may adjust the lodestar amount upward or downward based upon its analysis of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). The factors are:

> a. the time and labor required for the litigation;
> b. the novelty and difficulty of the questions presented;
> c. the skill required to perform the legal services properly;
> d. the preclusion of other employment by the attorney by acceptance of the case;
> e. the customary fee;
> f. whether the fee is fixed or contingent;
> g. time limitations imposed by the client or circumstances;
> h. the amount involved and the result obtained;
> i. the experience, reputation and ability of the attorneys;
> j. the "undesirability" of the case;
> k. the nature and length of the professional relationship with the client; and
> l. awards in similar cases. *Id.*

5.     The most critical factor in determining an attorneys' fee award is the degree of success obtained. *Saizan v. Delta Concrete Prods.Co., Inc.,* 448 F.3d 795, 799 (5th Cir. 2006).  Of the other *Johnson* factors, the court gives special heed to the time and labor involved, the customary fee, the amount involved and the result

obtained, and the experience, reputation and ability of counsel. *Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir.1990).

## II.    Lodestar Calculation

6.    Fee applicants bear the burden of establishing the appropriate hours and hourly rates and proving they exercised billing judgment. *Id.; see also Walker v. City of Mesquite, Tex.,* 313 F.3d 246, 251 (5th Cir.2002); *Riley v. City of Jackson, Miss.,* 99 F.3d 757, 760 (5th Cir.1996). Billing judgment requires documentation of the hours charged and of hours not charged because they were unproductive, excessive, or redundant. *Saizan v. Delta Concrete Products Co., Inc.,* 448 F.3d at 799.   The court properly reduces an award of fees by a percentage intended to substitute for the exercise of billing judgment. *Id.; see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002).

7.    Using these billing records as a benchmark, courts are to exclude from the lodestar calculation all time that is "excessive, duplicative, or inadequately documented." *Mid–Continent Cas. Co. v. Chevron Pipe Line Co.,* 205 F.3d 222, 234 (5th Cir.2000) (citing *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993)). If the documentation is vague or incomplete, a court may reduce the hours. *Kellstrom,* 50 F.3d at 324.

***Hours Claimed***

8.     Plaintiff seeks recovery of 338.21 hours of work totaling $182,000.00 in attorney's fees. *See* Plaintiff's Application at pgs. 5-6. The hours claimed by Plaintiff set forth in the billing records submitted with the fee application include unnecessary travel time related to Mr. Sinkule's move to Dallas, duplicative and/or unsubstantiated billing by counsel, and inconsistent billing practices between counsel. Defendant objects to the hours billed by Plaintiff as they are excessive, vague and unreasonable given the circumstances of the case. Defendant further objects to the hours billed as Plaintiff failed to exercise and/or demonstrate billing judgment.

9.     The billing records indicate Plaintiff expended approximately 21.5 hours totaling $10,750.00 in fees related to travel time for Darryl Sinkule—at his full rate—to commute to and from Dallas, Texas. *See* Attachment 2 to the Affidavit of Darryl Sinkule, Time Entry Nos. 19, 45, 93, 108, 102, and 109.  Notably, when retained by Plaintiff, Mr. Sinkule resided in Houston and worked with Mr. Slobin at the same firm.  (Doc. 1, p. 8).  Mr. Sinkule later moved to Dallas.  Defendant should not have to bear the burden of counsel's decision to move out of the venue in which Plaintiff sued.

10.     Moreover, the time entries do not reflect legitimate billable hours and were otherwise unproductive thereby exhibiting a lack of business judgment. Certain

activities for which Mr. Sinkule traveled to Houston (e.g. deposition, mediation, pre-trial conference) could have easily been performed by Mr. Slobin. As such, these time entries for travel are unreasonable and indicative of Plaintiff's lack of billing judgment.

11. The billing statements also reflect that Plaintiff's counsel expended at least 14.84 hours totaling $8,904.00 in fees in connection with inter office communications between Mr. Sinkule and Mr. Slobin. *See* Attachment 1 to the Affidavit of Darryl Sinkule, pgs. 8-10. The description of these time entries simply state: "Telephone communication between TS and DJS." The time entries are inadequately documented as they are devoid of any meaningful description as to the substance of these communications and provide no basis for which this court may assess their reasonableness. As such, these fees should be excluded and/or warrant a percentage reduction in the lodestar calculation.

12. Plaintiff also seeks recovery of 9.15 hours totaling $4,267.50 in fees for client communications. *See* Attachment 1 and Attachment 2 to the Affidavits of Darryl Sinkule and Todd Slobin. The time entries reflecting client email correspondence in Attachment 1 (i.e. Shellist Lazarz Slobin Invoice), were uniformly billed at increments of 0.17 irrespective of the email content or whether counsel drafted or simply reviewed client email correspondence. In contrast, Attachment 2 (i.e. Kilgore & Kilgore Invoice) reflects that similar time entries

6

relating to client correspondence were billed by Mr. Sinkule (after transferring to another law firm) at a standard increment of 0.1. The discrepancy highlights Plaintiff's excessive billing practices and lack of billing judgment. Given the disparity in billing increments and redundancy of these charges, these fees should be excluded and/or warrant a percentage reduction in the lodestar calculation.

13.     Defendant also objects to the hours billed by Plaintiff as excessive and/or unreasonable because counsel failed to delegate tasks to other attorneys or personnel that could perform the work at lower rates. The billing statements only reflect hours expended by two attorneys, Todd Slobin, who billed at rates of $600 per hour and, Daryl Sinkule, who billed at $450-$500 per hour. Many of the routine tasks (drafting pleadings, discovery and basic motions) for which Plaintiff seeks recovery could have been delegated to personnel whose lesser experience and skill would not justify such high rates and in doing so would achieve greater overall cost efficiency. *Leroy v. City of Houston,* F.2d 1068, 1079 (5th Cir. 1990).

14.     Despite any show of proof to support her claims, Plaintiff claims to have reduced the billable hours by 29.79 hours in an alleged exercise of billing judgment. *Id.* at pg. 6. Plaintiff claims to having deleted inefficient or duplicative work and by not billing for work performed by paralegals, legal assistants, or *other firm attorneys*. *Id.* However, the billing records do not reflect any work performed

048805.000042
6107848.1

by any other firm attorneys, paralegals or legal assistants or that hours were written off or performed on a pro bono basis.

15.     In fact, Mr. Sinkule, in his affidavit, specifically states that the billing records, which allegedly demonstrate reasonable billing judgment, do not reflect: (i) any time for work performed by paralegals and legal assistants, (ii) all of the time for conversations/correspondence between Plaintiff's counsel and defense counsel, (iii) all of the time for conversations/correspondence between Plaintiff's counsel and their client, and (iv) all of the time associated with revising documents and pleadings. *See* Exhibit A to Plaintiff's Application at ¶14.

16.     The Fifth Circuit has ruled that a district court may reduce an award based on the moving party's failure to "indicat[e] time written off as excessive or unproductive" in their records. *See Saizan v. Delta Concrete Prod. Co.,* 448 F.3d 795, 800 (5th Cir. 2006); *see also Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761,769 n.9 (quoting *Alberti*, 896 F.2d at 930) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off.") (internal quotation marks omitted); *Leroy v. City of Hous.*, 831 F.2d 576, 585 n.15 (5th Cir. 1987) (noting plaintiff's billing records were "completely devoid of any hours written off"); *Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 865 (S.D. Tex. 2011) (finding plaintiff exercised billing

048805.000042
6107848.1

judgment because records showed that attorneys wrote off entries that were redundant).

17.     Plaintiff, by its own admission, neglected to include the unbilled time and provides nothing more than self-serving testimony of Plaintiff's counsel by way of affidavit to meet its burden to prove that Plaintiff exercised billing judgment. Given the lack of competent evidence demonstrating the time that was written off or performed on pro-bono basis, the court should impose a thirty percent (30%) reduction in the lodestar. *Saizan v. Delta Concrete Prod. Co.,* 448 F.3d 795, 800 (5th Cir. 2006).

***Hourly Rates***

18.     To establish the reasonableness of the requested rate, fee applicants must produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *McClain v. Lufkin Indus., Inc*., 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 896, n.11 (2011)). The evidence to support an hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits. *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007). Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing in the community. *Tollet*

048805.000042
6107848.1

*v. City of Kemah,* 285 F.3d 357, 368 (5th Cir. 2002). The court may also exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees. *Davis v. Bd. of Sch. Comm'rs of Mobil County,* 526 F.2d 865, 868 (5th Cir.1976).

19.    Plaintiff seeks recover of fees for work performed by two attorneys, Todd Slobin, who billed at rates of $600 per hour and, Daryl Sinkule, who billed at $450 per hour (for work performed from 2015 to February 1, 2019) and $500 per hour (for work performed after February 1, 2019). Plaintiff claims that the rates charged by attorneys Daryl Sinkule and Todd Slobin are reasonable for employment related cases and are customary within the community for attorneys with similar experience and skill. In support of this contention, Plaintiff provides only the self-serving affidavits from the billing attorneys.

20.    In the first affidavit, Mr. Sinkule simply relies on his own experience and knowledge to substantiate his requested billing rate(s) and does not support his opinions with any substantive evidence reflecting reasonable rates within the applicable community. *See* the Affidavit of Darryl Sinkule attached as Exhibit A to Plaintiff's Application at ¶18. While Defendant outlines his tenure and experience in employment related matters, such self-serving testimony as to the rates customarily charged within the community is insufficient. *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007).

048805.000042
6107848.1

21.     In the second, Mr. Slobin attempts to substantiate his billing rate by generally citing a recent successful arbitration case in the summer of 2021 wherein his $600 per hour rate was allegedly approved by the arbitrator Susan Soussan. *See* the Affidavit of Todd Slobin attached as Exhibit B to Plaintiff's Application at ¶14. Mr. Slobin does not provide a case reference, description of the complexity of the issues involved, or if his rate withstood objection by opposing counsel. Plaintiff has therefore failed to provide sufficient information to assess the comparison and, in turn, the reasonableness of the rate as it relates the case at hand. As such, the vague and unsubstantiated evidence which Mr. Slobin cites is not probative of the rates charged in this case.

22.     Mr. Slobin also references the Adjusted Laffey Matrix and claims that his rate of $600 per hour is well below the suggested reasonable rate in the Washington, D.C. area of $894. *Id.* at ¶15. However, attorneys' fees are to be calculated at the "prevailing market rates in the *relevant community*." *Blum v. Stenson*, 465 U.S. 886, 895 (1984), *emphasis added*. The relevant community in this case would the jurisdiction in which the litigation occurred – i.e. the Southern District of Texas. Moreover, courts in this district routinely reject the *Laffey Matrix* as a guide to the reasonableness of attorneys' rates. *See In re Enron Corp. Securities, Derivative & ERISA litig.,* 586 F. Supp.2d 732, 819 (S.D. Tex. 2008) (The Laffey Matrix is contrary to the Fifth Circuit law endorsing the Johnson factors and

11

requiring the court to award fees based on prevailing market rates in the community); *SCA Promotions, Inc. v. Yahoo! Inc.*, Civil Action No. 3:14-CV-957, 2016 WL 8223206, at *7 n.15 (S.D. Tex. Nov. 21, 2016) (rejecting Laffey Matrix because it does not reflect prevailing rates in the community); *Malick v. NCO Fin. Servs., Inc.*, Civil Action No. H-14-CV-1545, 2015 WL 4078037, at *4 (S.D. Tex. Jul. 6, 2015) (same). As such, the comparison to the Adjusted Laffey Matrix is not probative of fees in the community where the litigation occurred.

23.     In contrast, the billing rates charged by defense counsel in this case who have similar tenure and experience in employment related matters were as follows: Jillian H. Panagos billed at a rate of $265 per hour and Kimberly R. Stuart billed at a rate of $265 per hour. These billing rates are far more conservative than those requested by Plaintiff and are probative of the reasonable rates in the applicable community, especially where potential insurance coverage and reporting to an insurance company, as Kelsey's counsel were required to do, are involved.

24.     Based on the foregoing, Plaintiff's requested hourly rates are not supported by competent evidence and are otherwise unreasonable with the community and given the circumstances of this case. Defendant would therefore ask the court to reduce the billing rates for Plaintiff's counsel to $365 or exercise its own expertise and judgment in making an independent evaluation of appropriate billing rates in relation to this case.

048805.000042
6107848.1

## III.   Johnson Factors

### *Novelty and Difficulty of Questions Presented*

25.     The case at hand involved basic employment discrimination claims pursuant to the Americans with Disabilities Act ("ADA"). The claims stem from a series of events that transpired over a period of only a few months (i.e. April 2015 to July 2015). The case did not involve complex legal issues and did not necessitate significant written discovery and/or numerous depositions of individuals with knowledge of the fact and circumstances (e.g. only two depositions were taken in this matter- Plaintiff Virginia Hawthorne and Defendant Kelsey-Seybold's representative Marnie Matheny).

26.     Contrary to Plaintiff's assertion, the fact that the jury sought instruction on an element of the disability claim during deliberation does not bear on the complexity of the case as much as it does the lack of sufficient presentation by counsel during trial. *See* Plaintiff's Application at pg. 7.  Moreover, both attorneys for Plaintiff are board certification in Labor & Employment Law and purport to have extensive experience in employment related matters. As such, Plaintiff's counsel cannot competently testify that the case at hand presented such novel and complex legal issues as to support the excessive and unreasonable attorney fees requested.  In fact, counsel was involved in at least four similar cases while Ms. Hawthorne's case was pending.  See *Deville v. Univ. of Texas M.D. Anderson Cancer Center,* 634

S.W.3d 324 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *Lee v. Accenture, LLP,*

2018 WL 6435635 (S.D. Tex. Dec. 7, 2018); *Lucas v. T-Mobile USA, Inc.,* 217

F.Supp.3d 951 (S.D. Tex. 2106); *Meade v. Ingram Micro, Inc.,* 2020 WL 7364605

(E.D. Tex. Dec. 14, 2020).

**The Amount Involved and the Result Obtained**

27.     The most critical *Johnson* factor—the amount involved and the degree

of success obtained—favors a reduction in the attorney's fees requested because the

requested fees do not bear a reasonable relationship to the amount in controversy.

*Saizan v. Delta Concrete Prods.Co., Inc.,* 448 F.3d 795, 799 (5th Cir. 2006).

28.     A requested fee is excessive if it does not "bear a reasonable

relationship to the amount in controversy." *Northwinds Abatement v. Employers Ins.,*

258 F.3d 345, 354 (5th Cir.2001) (citing *Jerry Parks Equip. Co. v. Southeast Equip.*

*Co.,* 817 F.2d 340, 344 (5th Cir.1987)). Even where the plaintiff's claims were

interrelated, nonfrivolous, and raised in good faith, when "a plaintiff has achieved

only partial or limited success, the product of hours reasonably expended on the

litigation as a whole times a reasonable hourly rate may be an excessive amount."

*Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see*

*also Migis v. Pearle Vision,* 135 F.3d 1041, 1047–48 (5th Cir.1998) (award of

$81,000.00 in attorney fees which was over six and one-half times the amount of

damages awarded was excessive when the Plaintiff only prevailed on one of four

interrelated claims); *see also Saizan v. Delta Concrete Prod. Co.,* 448 F.3d 795, 801 (5th Cir. 2006) (court could reduce lodestar amount based on degree of success).

29.     In the present case, Plaintiff prevailed on only two of the four causes of action alleged, that being Plaintiff's claims for disability discrimination and failure to accommodate pursuant to the ADA. *See* Dkt. 85. The jury did not find liability as to Plaintiff's claims for perceived disability and retaliation under the ADA. *Id.* In connection with these findings, the jury awarded Plaintiff actual damages of $21,883.93 for wages and benefits (from July 29, 2015 to Jan. 12, 2018) in connection with the disability claim and $5,237.19 for wages and benefits (from April 29, 2015 to July 22, 2015) as a result of Defendant's failure to accommodate Plaintiff. *Id.* In total, Plaintiff received a judgment for $27,121.12 in damages after having sought in excess of $67,000.00 when considering discretionary pain and suffering requested. *See* Dkt. 87. The jury did not award Plaintiff damages for pain and suffering or punitive damages on either of the successful claims.

30.     Notwithstanding, Plaintiff seeks to recover $182,000.00 in attorney fees which equates to more than 6.7 times the amount of damages awarded by the jury. Furthermore, Plaintiff's success relative to the relief sought was limited. At trial, Plaintiff sought recovery of approximately $120,000 in back and front pay damages, and compensatory damages. In addition, Plaintiff zealously advocated for punitive damages in an unspecified amount.

31.     Given the significant disparity between the relief sought and the damages award, and the fact that Plaintiff only achieved partial or limited success as to her claims, the attorney fees are excessive and warrant a percentage reduction in the lodestar amount. *See Migis v. Pearle Vision,* 135 F.3d 1041, 1047–48 (5th Cir.1998).

## IV.   COSTS AND FEES

32.     Courts do not "rubber stamp" expense requests, even when authorized. *Holmes v. Cessna Aircraft Co*., 11 F.3d 63, 64 (5th Cir. 1994) (citing <u>Fogleman v. ARAMCO</u>, 920 F.2d 278, 286 (5th Cir. 1991).  Though the permissible costs under 42 U.S.C. § 12205 are broader than those recoverable under section 1920, recoverable costs remain limited to those "necessarily incurred in the case."  The Court has broad discretion in determining an appropriate award of costs. *Gibbs v. Gibbs,* 210 F.3d 491, 500 (5th Cir.2000). The Court gives "careful scrutiny" to the items proposed by the prevailing party and is free to decline to award costs where the expenses are not deemed to have been "reasonably necessary" to the litigation. *See, e.g., CypressFairbanks Indep. Sch. Dist. v. Michael F.,* 118 F.3d 245, 257–58 (5th Cir.1997); *see also Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1099 (5th Cir.1982).

33.     In the present case, Plaintiff seeks recovery of $8,796.61 in litigation expenses and costs pursuant to ADA, 42 U.S.C. §12205. *See* Plaintiff's Application

at pg. 2. Plaintiff allegedly incurred a total of $3,533.73 in expenses and costs through the firm Shellist Lazarz Slobin and $5,262.88 in expenses and costs through the firm Kilgore & Kilgore. *See* the Affidavit of Darryl Sinkule at ¶21; *see also* the Affidavit of Todd Slobin at ¶21. The litigation expenses and costs are itemized on pgs. 11-12 of Attachment 1 and pgs. 6-7 of Attachment 2 to both the Affidavits of Darryl Sinkule and Todd Slobin.

34.    A large portion of the requested costs are Mr. Sinkule's travel expenses and meals. *See* Attachment 2 to Affidavits of Darryl Sinkule and Todd Slobin at pg. 7. Plaintiff sued in Houston, Texas and had counsel located in Houston, Texas. Indeed, Mr. Sinkule was located in Houston, Texas when the litigation began. Defendant should not have to bear the burden of Mr. Sinkule's travel expenses upon his move to Dallas. *See Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 517 (E.D. La. 2018) (refusing to award travel-related expenses to out-of-state counsel).

35.    Plaintiff also seeks to recover costs of mediation totaling $1,915.00. *See* Attachment 2 to Affidavits of Darryl Sinkule and Todd Slobin at pg. 7. Mediation costs are not recoverable costs under section 1920, and which were also incurred by Defendant. *See Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt. Inc.,* 491 F.3d 266, 276 (5th Cir. 2007); *see also Dibler v. Metwest, Inc.,* No. 3:95-CV-1046-BC, 1997 WL 222910, at *9 (N.D. Tex. Apr. 29, 1997). The

17

Court should therefore decline to award Plaintiff the mediation fee also borne by Defendant.

36.    Plaintiff also seeks reimbursement for 2,440 copies of documents totaling $610.00 and an additional $403.30 without explanation for a total of $1,013.30. *See* Attachment 1 to Affidavits of Darryl Sinkule and Todd Slobin at pg. 12; *see also* Attachment 2 to Affidavits of Darryl Sinkule and Todd Slobin at pg. 7. Copies may be recoverable provided the prevailing party demonstrates their necessity. *See CypressFairbanks,* 118 F.3d at 257–58.  Plaintiff has not provided any itemized breakdown of the copying costs for the court to determine their reasonableness and/or necessity.

37.    Further, assuming arguendo that Plaintiffs printed three copies of the joint exhibits (which totaled approximately 700 pages), this would yield approximately 2,100 total printed pages. Therefore, Plaintiff not only seeks to recover costs associated with printing an excessive amount of pages, but also seeks to recover printing costs at a rate of 25 cents per copy—a highly inflated price in this day and age. *See* Attachment 1 to Affidavits of Darryl Sinkule and Todd Slobin at pg. 12. A cursory online search reveals that most bulk printers, including OfficeMax and UPSStore charge a maximum of 13 cents per copy for black and white copies for the quantity sought by Plaintiffs. Given the above, the court should exclude the $403.30 in copy costs in their entirety and utilize the standard rate of 13 cents per

18

copy for the the remaining 2,440 pages.  In doing so, Defendants request a reduction in the recoverable cost for copies from $1,013.30 to $317.20.

38.    Plaintiff has also failed to support the necessity of any delivery, postage or research fees in connection with the litigation and/or trial of this case. These costs should therefore be excluded.

39.    Finally, Plaintiff seeks to recover the costs of daily transcripts from Ms. Dye.  Daily transcripts, while a convenience, are not necessary to the litigation. Indeed, Defendant also incurred this expense as a convenience.  As such, the court should exclude these costs.

40.    In sum, Defendant objects to the following expenses and costs sought by Plaintiff in relation to this lawsuit:

| | |
|---|---|
| Sinkule Travel Expenses | $2,540.58 |
| Parking Reimbursements | $107.00 |
| Mediation Fee | $1,915.00 |
| Copies | $696.10 |
| Research | $342.50 |
| Delivery Fee/Postage | $33.03 |
| Daily Transcript | $1,054.80 |
| **Total Amount of Reduction Sought** | **$6,689.01** |

Accordingly, Defendant seeks a reduction of Plaintiff's requested expenses and costs from $8,796.61 to $2,107.60.

048805.000042
6107848.1

## <u>CONCLUSION AND PRAYER</u>

Defendant, KS Management Services, LLC, respectfully requests that the Court deny Plaintiff's Application for Attorneys' Fees, Litigation Expenses, and Costs as to the amount of reasonable attorney fees, litigation expenses and cost. Defendant further requests that the Court exclude all excessive and unreasonable attorney's fees and apply a ten percent (30%) reduction to the lodestar amount based on the lack of billing judgment and the disparity between the relief sought and the award of damages[1] and reduce the requested expenses to $504.84. Defendant finally requests that this Court grant Defendant all such other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

CRAIN, CATON & JAMES PC

By: *s/ Kimberly R. Stuart*
JULIANN H. PANAGOS
State Bar No. 06861100
Federal ID No. 9083
KIMBERLY R. STUART
State Bar No. 00797486
Federal ID No. 21966
D. ALAN APPLING
State Bar No. 24092043
Five Houston Center
1401 McKinney Street, Suite 1700
Houston, Texas 77010
Telephone:  713-658-2323
Facsimile:  713-658-1921
Email: jpanagos@craincaton.com
Email: kstuart@craincaton.com

20

Email: aappling@craincaton.com

ATTORNEYS FOR KS MANAGEMENT SERVICES, LLC

---

[1] While there is no per se proportionality rule, Defendant suggests a 30% reduction commensurate with the recovery of damages in two of the four causes of action, giving proper weight to the causes of action upon which Plaintiff recovered, proportional to the damages requested (Plaintiff requested in excess of $67,000 and recovered about $21,000). *See West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 395 (5th Cir. 2003).

048805.000042
6107848.1

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document has been forwarded to the following counsel of record in the manner indicated on the 12th day of January 2022:

ELECTRONICALLY VIA THE CM/ECF SYSTEM:

VIA EMAIL: DJS@KILGORELAW.COM
Daryl J. Sinkule
Kilgore & Kilgore, PLLC
Kilgore Law Center
3109 Carlisle Street
Dallas, Texas 75204-1194

VIA EMAIL: TSLOBIN@EEOC.NET
Todd Slobin
Shellist | Lazarz | Slobin LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046

Kimberly R. Stuart

048805.000042
6107848.1