United States District Court
Southern District of Texas
**ENTERED**
May 17, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Virginia Hawthorne, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action H-17-2350 |
| | § | |
| KS Management Services, LLC, | § | |
| d/b/a Kelsey-Seybold Clinic, | § | |
| Defendant. | § | |

## ORDER ON MOTION FOR ATTORNEYS' FEES

Pending before the court is Plaintiff Virginia Hawthorne's motion for attorneys' fees. ECF No. 89. The motion is granted in part.

Hawthorne sued KS Management Services, LLC, (Kelsey-Seybold) on August 1, 2017, alleging that Kelsey-Seybold discriminated against her, retaliated against her, and failed to provide a reasonable accommodation in violation of the Americans with Disabilities Act (ADA). *See* ECF No. 1. The case was tried before a jury, which rendered a verdict in favor of Hawthorne on her disability discrimination and failure to accommodate claims in the amount of $27,121.12. ECF No. 85. The jury did not award punitive damages. *Id.* The court entered final judgment in that amount. ECF No. 87.

Hawthorne filed a motion for attorneys' fees under 42 U.S.C. § 12205. *See* ECF No. 89. Hawthorne originally sought $182,000 in attorneys' fees and

$8,796.61 in litigation expenses and costs. *Id.* at 2. Kelsey-Seybold responded. ECF No. 92. Hawthorne replied and reduced the amount of attorneys' fees requested to $176,625. ECF No. 97.

*1. Legal Standards*

The ADA allows for the recovery of "a reasonable attorney's fee, including litigation expenses[] and costs." 42 U.S.C. § 12205. "[A] prevailing plaintiff in an ADA case 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Shelton v. La. State*, 919 F.3d 325, 328 (5th Cir. 2019) (quoting *Lefemine v. Wideman*, 568 U.S. 1, 5 (2012)).

The fee applicant must submit documentation to establish entitlement to an award. *Fox v. Vice*, 563 U.S. 826, 838 (2011). The court, however, does not need "to achieve auditing perfection" but only "to do rough justice[.]" *Id.* The "trial court[] may take into account [its] overall sense of a suit[] and may use estimates in calculating and allocating an attorney's time." *Id.*

"In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). "After

2

determining the lodestar, the district court may then examine the *Johnson*[1] factors to decide if appropriate adjustments to the lodestar are necessary." *Rodney*, 853 F. App'x at 924. (citing *Migis*, 135 F.3d at 1047). The *Johnson* factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

*2. Analysis*

The court has carefully considered Plaintiff's motion, the supporting documentation and Defendant's arguments in response under the applicable legal standard.

*A. Attorneys' Fees*

As an initial matter, Kelsey-Seybold contests Plaintiff's entitlement to attorneys' fees because she did not prevail on all causes of action raised and received

---

[1] Johnson *v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 91–93 (1989).

3

only thirty percent of the damages she sought. ECF No. 92 at 1–2. The court disagrees.

Under the ADA, a plaintiff is entitled to attorneys' fees as a prevailing party if: (1) she achieved judicially sanctioned relief; (2) the relief materially alters the parties' legal relationship; and (3) the relief modifies the defendant's behavior to the benefit of the plaintiff at the time the relief is entered. *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 576 (5th Cir. 2018). Because these three conditions are met in this case, Plaintiff is a prevailing party. Plaintiff accomplished a jury verdict and an award of compensatory damages for Defendant's violations of the ADA, which, together, alter the parties' relationship to Plaintiff's benefit and provide incentive to avoid similar conduct. *See Shelton*, 919 F.3d at 331 (noting that the Fifth Circuit's "decisions affirming fee awards have focused on the plaintiff's accomplishments within the litigation itself, such as the deterrent value of a jury verdict or the significance of a new legal precedent"). Defendant points to no special circumstances that would render the award of attorneys' fees unjust. *See id.* at 328.

### i. Hourly Rate

Plaintiff seeks hourly rates of $450 per hour from 2015 to January 31, 2019, and $500 per hour since February 1, 2019, for Daryl Sinkule and $600 per hour for Todd Slobin. ECF No. 97 at 4. Slobin cites the Adjusted Laffey Matrix, a tool used in other parts of the country to determine reasonable rates, to suggest the

4

reasonableness of his hourly rate. Slobin's Decl. ¶ 15, ECF No. 89-2. The court declines to do so. S*ee Novick v. Shipcom Wireless, Inc.*, Civil Action No. 4:16-CV-00730, 2018 WL 6079348, at 2 (Nov. 21, 2018) (citing cases) (noting that the Adjusted Laffey Matrix is not consistent with the Fifth Circuit's approach to determining reasonable rates). Defendant asks the court to reduce the billing rates to $365. ECF No. 92 at 12.

The Fifth Circuit has held that a reasonable hourly rate is "an appropriate hourly rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). To determine a reasonable hourly rate, the court reviewed State Bar of Texas statistical reports of median hourly rates for labor and employment attorneys in Houston over several years. *See* State Bar of Tex. 2019 Income & Hourly Rates (2019 Report); State Bar of Tex. Dep't of Research & Analysis 2015 Hourly Fact Sheet (2015 Fact Sheet).

In 2015, the median hourly rate in Texas for labor and employment attorneys was $278 per hour. In Houston, that median rate was $285 per hour. In Texas, attorneys with more than sixteen years of experience billed a median hourly rate of $300 per hour. According to the 2019 Report, median hourly rates in Texas increased at a rate of 2.75 percent per year between 2015 and 2019. Starting with $285 per hour for all labor and employment attorneys in Houston in 2015 and assuming a 2.75 percent growth rate through 2022 results in an hourly rate of $344 for all labor

5

and employment attorneys in Houston in 2022. Given the fact that experienced lawyers, such as Plaintiff's counsel here, would be expected to earn more than the median and given the professionalism and effectiveness of the lawyers in this case, the court concludes that $400 per hour is a reasonable hourly rate.

### ii. Hours Expended

Plaintiff seeks attorneys' fees for a total 338.21 hours. ECF No. 89 at 5. Defendant raises several objections to the requested number of hours. ECF No. 92 at 5–9. The fee applicant bears "the burden of proof of reasonableness of the number of hours." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 528 (5th Cir. 2001) (quoting *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987)).

Defendant argues that the billing records include unnecessary travel time for Sinkule to commute between Dallas and Houston. ECF No. 92 at 5. Sinkule, Plaintiff's lead counsel, resided in Houston when he was retained and relocated to Dallas during litigation. ECF No. 97 at 2. In her reply, Plaintiff conceded fifty percent of the travel time. The court agrees that Defendant should not bear the full cost of Sinkule's travel time and finds that this reduction is appropriate. The total number of hours billed for travel is reduced by fifty percent to 10.75 hours.

Defendant also argues that the 14.84 hours billed for telephone communication between Sinkule and Slobin are inadequately documented.

ECF No. 92 at 6. The court disagrees. More detail is not needed to demonstrate the reasonableness of attorneys communicating and collaborating during litigation.

Defendant also argues that the 9.15 hours billed for client communications should be excluded or reduced because Sinkule and Slobin billed this time in different increments (one-sixth of an hour sometimes and one-tenth at others). ECF No. 92 at 6–7. The court disagrees. There is nothing improper in using either 0.1 or 0.17 billing increments or a mix thereof. The hours billed for client communications are reasonable. Attorneys need to communicate with their clients.

Defendant also argues that Plaintiff's counsel failed to delegate tasks to junior attorneys or other personnel that could perform the work at lower rates. The court agrees. The billing records include time spent doublechecking other's work and performing routine tasks that should have been delegated and billed at a lower rate. Plaintiff's counsel argue that they reduced the billable hours by approximately thirty hours to account for tasks performed by other firm attorneys, paralegals, and secretaries. Sinkule's Decl. ¶ 14, ECF No. 89-1. Despite this concession, many tasks were performed by Sinkule and Slobin that should not be billed at their hourly rate. In fairness, these excesses should not be passed on to Defendant. Rather than go through every item in the billing record to determine how much time should be shaved off each task, the court accounts for counsel's billing at a higher rate than ought to have been billed by applying a multiplier of ninety percent.

7

None of the *Johnson* factors that are not addressed in the above discussion requires further adjustment to the lodestar.   The court concludes that the total reasonable hours billed is 327.46. Multiplying 327.46 hours by $400 yields $130,984. Applying a ninety percent multiplier yields $117,885.60 in fees.

### B. Costs and Litigation Expenses

Plaintiff seeks reimbursement in the amount of $8,796.61 for the expense of court fees, research, parking, court reporting and transcripts, postage, copies, mediation, and Sinkule's travel expenses including mileage, hotel, and meals. ECF No. 89-1 at 21–22, 29; ECF No. 89-2 at 18–19, 26. Defendant objects to allowing costs for research, travel and parking, mediation, delivery, and postage and to the amount sought for transcripts and copies. ECF No. 92 at 16–19.

A court may tax as costs (1) "[f]ees of the clerk and marshal;" (2) "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case;" (3) "[f]ees and disbursements for printing and witnesses;" (4) "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;" (5) "[d]ocket fees under [28 U.S.C § 1923];" and (6) "[c]ompensation of court appointed experts or interpreters . . . ." 28 U.S.C. § 1920.

Of the costs that Plaintiff seeks, the following are covered under Section 1920: court fees; court reporting and transcripts; and copies. Defendant does not object to the court's allowing these three categories of costs.

Defendant argues, however, that daily transcripts of the trial are not a necessary cost. ECF No. 92 at 19. The court disagrees. Even if rush production of transcripts were not covered by Section 1920, they would be covered as a litigation expense under Section 12205, discussed further below.

Defendant also argues that the copying costs are for an excessive number of pages at a "highly inflated price" and are not sufficiently itemized in the billing records. ECF No. 92 at 18. The court agrees that twenty-five cents per page for printing is excessive. Defendant represents that an online search revealed that most retail bulk printers charge a maximum of thirteen cents per page, and Plaintiff does not dispute that price. ECF No. 92 at 18; ECF No. 97 at 6–7. Plaintiff fails to explain satisfactorily why the cost of copies is billed at nearly double the retail rate. The court thus reduces the cost per page to thirteen cents. Based on the dollar amount billed for copies at twenty-five cents each, the court calculates that total number of copies was approximately 4,053. Multiplying 4,053 by .13 yields $526.89, a reduction of $486.41.

About the numbers of pages printed and the itemization challenge, the court's function is not to achieve auditing perfection. Because the court recognizes that

many pieces of paper are necessarily generated in litigation, the court does not need a detailed account of every page printed to conclude that the number of pages in this case is not unreasonable.

Under Section 12205, a court may award a prevailing party litigation expenses in addition to attorneys' fees and costs. The ADA's inclusion of litigation expenses differs noticeably from the language in other employment statutes that allow a prevailing party to recover only fees and costs. *See, e.g.,* 29 U.S.C. § 216(b) (not mentioning litigation expenses in the FLSA fees provision); 29 U.S.C. § 1132(g)(1) (not mentioning litigation expenses in the ERISA fees provision).

The regulations implementing the ADA explain that "[l]itigation expenses include items such as expert witness fees, travel expenses, etc." 28 C.F.R. Part 35, App'x B § 35.175 (2021); *see also* 28 C.F.R. Part 35, App'x B, § 35.103 (2021) (indicating that Part 35, which implements subtitle A of title II of the ADA, "includes appropriate provisions derived from the regulations implementing [titles I and III]"); *see also Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002)). The legislative history demonstrates that "Congress included the term 'litigation expenses' in order to authorize a court to shift costs such as expert witness fees, travel expenses, and the preparation of exhibits." *Lovell*, 303 F.3d at 1058 (quoting H.R. Rpt. No. 101-485(III) at 73, *reprinted in* 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("This provision explicitly incorporates the phrase

'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision.")).

The court is guided by the statute's language, the regulation's interpretation, and the legislative history in determining that Section 12205's inclusion of litigation expenses authorizes shifting costs that are not included in Section 1920. The court, in its discretion, concludes that Plaintiff's costs for research, parking, postage, mediation, and travel are necessary litigation expenses covered by Section 12205 that should be allowed.

The total amount of allowable costs and litigation expenses is $8,310.20.

*2. Conclusion*

Plaintiff is awarded $126,195.80 in attorneys' fees, costs, and litigation expenses. This order is final and appealable.

Signed at Houston, Texas, on May 17, 2022.

Peter Bray
United States Magistrate Judge